The Court at General Term (after stating the facts as above), said :—“It seems that strictly the exceptions of the plaintiff are confined to the facts that are pertinent to the second position. In opposing defendant’s motion to dismiss the complaint, the plaintiff resisted it, by asking to be allowed to go to the jury on the question as to the overloading of the scaffold. The case does not show that he expressed to the court a desire to go to the jury upon any other question, unless that is evinced by the words of the case, namely : ‘ Plaintiff’s counsel asks, among other things,’ etc. These words are indefinite, and not calculated to apprise the court that the plaintiff rests upon any particular issue in the case.
“If the plaintiff be confined to the question indicated, it should be held that the act of the foreman in overloading, so to call it, the scaffold, was an act of the fellow servant of plaintiff, for which the defendant is not responsible to him (Malone v. Hathaway, 61 N. Y. 5).
“ If, however, the other question may be examined, it is to be said that the plaintiff’s own evidence showed that the defendant was not negligent in the construction of the scaffold. It may be assumed that the falling of the scaffold called for explanation, and that, without it, there would be a presumption that the scaffold had been negligently put up. If, however, the facts proven by the plaintiff showed there was no negligence in the construe *526 tion, the defendant was not called upon to repeat testimony already in the case. The plaintiff called a witness, by trade a carpenter. He proved that the falling was due to the breaking of a joist, one of the supports. By his testimony, there was no other point of weakness. The joist was a clear piece of white spruce that had begun to split about three feet from where it broke. There did not appear any signs of decay ; it was of about the usual size. Another of plaintiff’s witnesses, also a carpenter, saw the joist after the accident. He testified that he noticed that it was not solid, there being a ‘ shake ’ in it, and that a ‘ shake ’ in a piece of wood a man does not very often notice. If this were all the testimony on the point, it would affirmatively appear that there was no negligence in selecting the joist that broke. The only testimony that could be adduced to vary this result, came from the second witness referred to. That testimony consisted of short sentences, which had an ambiguous application. After saying that a man does not often notice a ‘ shake,’ he said of the shake, if it had been looked at, it wouldn’t have been there. It is possible that the witness meant to say that if the joist had been looked at, it would not have been where it was in the scaffold. In answer to a question, 1 state what was the condition of the joist or timber,’ he said it looked suspicious ; ‘ any body that had a notion of wood could tell what it was.’ If these parts of his testimony are the controlling matter in considering what was the effect of his evidence, it is to be seen that they do not show with any certainty what kind or degree of attention would have disclosed to those building the scaffold, that there was a shake in the joist. In reality, the most important fact he testified to, is that men do not often notice a ‘ shake.’ There was nothing in his testimony which would have allowed a jury to disregard the evidence of plaintiff’s first witness, for whose credibility the plaintiff vouched by calling him. That evidence was to the effect that the joist had the appearance of being clear, fair and strong.”
Louis J. Grant, for plaintiff.
Albert G. McDonald, for defendant.
Opinion by Sedgwick, Ch. J. ; O’Gorman, J., concurred.
Plaintiff’s exception overruled, and judgment for defendant- ordered that complaint be dismissed, with costs.